UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNION INSURANCE COMPANY, | \* | CIV 18-4160 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS |
| BRUCE SCHOLZ, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Plaintiff, Union Insurance Company's ("Union Insurance"), Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 18.) The Court has considered all filings and for the following reasons, Plaintiff's motion is granted.

## BACKGROUND

Plaintiff Union Insurance is a corporation incorporated in Iowa and with its principal place of business in Iowa. Defendant Bruce Scholz ("Scholz") is a citizen of Minnehaha County, South Dakota. Jurisdiction over this insurance coverage dispute is premised on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

On December 1, 2017, Scholz was involved in an automobile accident and suffered personal injuries. The personal auto insurance carrier for the other driver tendered its full policy limit of $50,000.00 on the claim brought by Scholz. At the time of the accident Scholz was employed by DC Automotive and Kooiman Automotive Inc. d/b/a Ultimate Automotive and Sioux Falls Truck & Auto Accessories ("DC Automotive") as a service technician in Sioux Falls, South Dakota. In the course of his employment with DC Automotive, Scholz was test driving a vehicle owned by Kevin Kontz, a customer of DC Automotive ("Customer Vehicle"), after completing mechanical repairs on the Customer Vehicle.

Union Insurance issued a multi-peril commercial lines insurance policy to Scholz's employer, DC Automotive, under policy number GO 3115324-21 ("Policy"), which provided

coverage for the period of December 5, 2016 to December 5, 2017.  Scholz requested underinsured motorist ("UIM") coverage under the Policy.  Union Insurance denied his claim.

Union Insurance brought this action seeking a declaratory judgment as to whether Scholz qualifies as an "insured" for purposes of collecting UIM benefits under the Policy issued to DC Automotive. *See* 28 U.S.C. §§ 2201–02.

## STANDARD OF REVIEW

Rule 12(h)(2) of the Federal Rules of Civil Procedure specifically instructs that motions to dismiss for failure to state a claim may alternatively be brought by a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Fed.R Civ. P. 12(h)(2). The difference between a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings is timing. A party may move for judgment on the pleadings after the pleadings have closed. Fed.R.Civ.P. 12(c).  In deciding a Rule 12(c) motion, courts apply the same legal standard used for a motion to dismiss under Rule 12(b)(6). *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Eighth Circuit has explained the interplay between Rule 12(b)(6), Rule 12(c) and Rule 12(h).  *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  In *Westcott*, the defendant brought a motion to dismiss based on sovereign immunity after it had filed its answer, so the court treated the motion as a motion for judgment on the pleadings pursuant to Rule 12(c) and ultimately dismissed the case for failure to state a claim upon which relief could be granted. *Id.* at 1490. In affirming the district court's dismissal, the Eighth Circuit noted:

> The parties agree that this case should be analyzed under the rubric of Federal Rule of Civil Procedure 12(b)(6). Technically, however, a Rule 12(b)(6) motion cannot be filed after an answer has been submitted. *See* Fed.R.Civ.P. 12(b). But since Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be advanced in a motion for judgment on the pleadings under Rule 12(c), we will treat the City's motion as if it had been styled a 12(c) motion. *St. Paul Ramsey County Med. Ctr. v. Pennington County*, 857 F.2d 1185, 1187 (8th Cir. 1988). This distinction is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions. *Id*; *accord Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (collecting cases).

*Id.* at 1488.

A plaintiff may move for judgment on the pleadings to obtain a declaratory judgment where the parties' only dispute is the proper interpretation of contractual terms. *See*, *e.g.*, *Hous. Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596 (7th Cir. 2004) (upholding trial court's

decision to grant plaintiff's motion for judgment on pleadings where plaintiff sought a declaratory judgment that under the parties' insurance contract plaintiff had no duty to defend the defendants in a lawsuit).

Courts deciding a Rule 12(c) motion are required to accept as true the well-pled allegations and must resolve all inferences in the non-moving parties' favor. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). However, this tenet does not apply to legal conclusions, "formulaic recitation of the elements of a cause of action," or factual assertions which are so indeterminate as to require further factual enhancement. *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky*, 433 F.3d at 610.

When considering a motion for judgment on the pleadings, a court generally must ignore all materials outside the pleadings. *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Id.* (internal quotation marks omitted). Accordingly, the Court will consider the certified copy of the Policy attached to the Complaint at Exhibit A.

In his brief in response to the motion for judgment on the pleadings, Scholz contended that he did not receive copies of an "Auto Dealer's Coverage Form" or a "Motor Carrier Coverage Form." (Doc. 32 at 4.) Both are mentioned as being modified by the UIM endorsement along with the "Business Auto Coverage." (*Id*.) In its reply, Union Insurance points out that Exhibit A of its Complaint is a true and complete copy of the Policy issued to DC Automotive, and the Policy does not include either an "Auto Dealer Coverage Form" or a "Motor Carrier Coverage Form." (Doc. 31 at 4.) According to Union Insurance, the UIM endorsement it uses is a standard form in the insurance industry, and the fact that three types of coverage are listed does not mean that the insurance policy necessarily includes all of those coverage parts. Here, the Union Insurance Policy incorporates the Business Auto Coverage, which is modified by the UIM endorsement. (Doc. 31 at 5).

Scholz has not responded with a showing that Exhibit A is anything but a complete and true copy of the Policy. Thus, there is nothing more than Scholz's initial naked assertion that an Auto Dealer's and a Motor Carrier form might be missing simply because they are mentioned in the UIM

endorsement. That is not sufficient to call into question the authenticity of the certified copy of the Policy in Exhibit A, and the Court concludes that there is no dispute of material fact that would preclude judgment on the pleadings in this case.

## DISCUSSION

### A. Contract Interpretation

The parties agree that since this is a federal diversity action, South Dakota substantive law applies. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 455 (8th Cir. 1998) ("State law controls the construction of insurance policies when a federal court is exercising diversity jurisdiction.").

Interpretation of an insurance contract is a question of law. *Ass Kickin Ranch, LLC, v. North Star Mut. Ins. Co.*, 822 N.W.2d 724, 726 (S.D. 2012) (quoting *De Smet Ins. Co. of S.D. v. Gibson*, 552 N.W.2d 98, 99 (S.D. 1996)). In South Dakota, "'the scope of coverage of an insurance policy is determined from the contractual intent and the objectives of the parties as expressed in the contract.'" *Id.* at 727 (quoting *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994)) (alteration omitted). "'An insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties.'" *North Star*, 822 N.W.2d at 727 (quoting *Stene v. State Farm Mut. Auto. Ins. Co.*, 583 N.W.2d 399, 402 (S.D. 1998)).

Thus, when a contract's terms are plain and unambiguous, the terms' ordinary meanings are to be applied without judicial construction. *See id.* (quoting *Am. Family Mut. Ins. v. Elliot*, 523 N.W.2d 100, 102 (S.D. 1994)). *See also Munroe v. Continental Western Ins. Co.*, 735 F.3d 783, 786 (8th Cir. 2013) ("If the policy is unambiguous, it will be enforced as written, absent statutory or policy considerations."). On the other hand, when contract provisions are ambiguous, the interpretation favoring coverage for the claimant is to be adopted. *North Star*, 822 N.W.2d at 727 (quoting *Nat'l Sun Indus., Inc. v. S.D. Farm Bureau Ins. Co.*, 596 N.W.2d 45, 48 (S.D. 1999)). In order to be found ambiguous, the contract language must be fairly susceptible to different interpretations and "'[t]he fact that the parties differ as to the contract's interpretation does not create an ambiguity.'" *Id.* (quoting *Zochert v. Nat'l Farmer Union Prop. & Cas. Co.*, 576 N.W.2d 531, 532 (S.D. 1998)). Finally, contract provisions should not be interpreted independent of one another. Instead, a contract should be read as a whole and courts should endeavor to give effect to all the contract's terms, "avoiding an interpretation that renders some provisions useless or redundant."

*Munroe*, 735 F.3d at 787. *See Reisig v. Allstate Ins. Co.*, 645 N.W.2d 544, 550 (Neb. 2002) (citing *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 576 N.W.2d 806 (Neb. 1998)) ("The contract must be construed as a whole, and if possible, effect must be given to every part thereof.").

In light of the foregoing principles, the question of coverage in this case must be determined by reference to the language of the Policy.

### B.  Policy Language

As stated previously, a complete and certified copy of the Union Insurance Policy is attached as Exhibit A to the Complaint. (Doc. 1, Ex. A.)  The first page of the Policy is a certification page providing that "this is a true and exact copy of Policy # GO3115324-21." (Doc. 1, Ex. A, p. 1.)  On a motion for judgment on the pleadings, courts may consider "items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 903–04 (8th Cir. 2017).

The Business Auto Coverage portion begins on page 162 of the Policy.  Item One of the Declarations page states, in part:

> **NAMED INSURED AND ADDRESS**
> DC Automotive and Kooiman Automotive Inc OBA Ultimate Automotive and Sioux Falls Truck & Auto Accessories
> 4707 E Arrowhead Pkwy
> Sioux Falls, SD 57110

(Doc. 1, Ex. A, p. 162.)

The UM/UIM endorsement begins at page 187 of the Policy. (Doc. 1, Ex. A, p. 187.)  The endorsement defines "Who is An Insured" for UIM coverage when the named insured is a corporation or any other form of organization, as follows:

> a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> b.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(Doc. 1, Ex. A, p. 187–88.)  Subpart "b" is inapplicable here because Scholz is seeking damages for his own bodily injuries and not those sustained by another insured.

Section I of the Business Auto Coverage Form defines covered autos as follows:

5

>Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

(Doc. 1, Ex. A, p. 174.)

>"Item Two" of the Declarations provides, in relevant part:
>
>**Schedule Of Coverages And Covered Autos**
>
>This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.**

(Doc. 1, Ex. A, p. 163) (emphasis in original). For the purposes of UIM coverage, the Union Insurance Policy defines a "covered 'auto'" through the use of the symbol "7." (*Id*.) In other words, the symbol "7" is entered next to "Underinsured Motorists" in the "Covered Autos" section on page 163 of the Policy, and it shows that DC Automotive was charged a premium in the amount of $257 for UIM coverage. (*Id*.) The Union Insurance Policy defines symbol "7" as follows: "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." (Doc. 1, Ex. A, pages 163 and 174.)

"Item Three" of the Declarations identifies ten covered autos owned by DC Automotive by vehicle year, model, and VIN Number. (Doc. 1, Ex. A, p. 164–166.) The Union Insurance Policy does not identify the Customer Vehicle being driven by Scholz at the time of the accident as a "covered auto" owned by DC Automotive.

### C. Analysis

According to Union Insurance, the plain language of the Policy provides UIM coverage only if the injured party was occupying a "covered auto." The Policy specifically defines "covered auto" for UIM purposes as only those autos listed in "Item Three" as owned by DC Automotive. At the time of the accident, Scholz was not operating a "covered auto" as defined by the Policy. Thus, Scholz is not an insured for IUM coverage as defined under the Policy. For these reasons, Union Insurance seeks a judgment on the pleadings.

Scholz does not dispute that the Customer Vehicle he was driving at the time of the accident was not owned by DC Automotive. Scholz asserts, however, that he was not required to be driving a vehicle owned by DC Automotive at the time of the accident in order to qualify for UIM benefits under the Policy. There are three main arguments he makes in support of this position. First, Scholz claims that the lack of symbol "7" on the UIM endorsement creates an ambiguity regarding whether only vehicles owned by DC Automotive are "covered autos" for UIM purposes. Second, he contends that the term "owned" vehicle is never used in the UIM endorsement. Rather, the endorsement only uses the term "covered auto" which could include a non-owned vehicle. Third, Scholz argues that limiting UIM coverage to vehicles owned by DC Automotive would be contrary to the public policy favoring UIM coverage when liability insurance fails to adequately cover damages.

Scholz describes his first argument about the absence of symbol "7" on the UIM endorsement as follows: "The lack of a 'symbol' on the UIM/UM endorsement creates a structural confusion about whether the UIM/UM endorsement is an 'any' vehicle endorsement, which would be indicated by a 'symbol 1,' although no 'symbol 1' is present, or an endorsement that only covers certain vehicles contained within a printed schedule, as would be indicated by 'symbol 7.[1]'" (Doc. 32 at 7–8.) He contends that this ambiguity must be resolved in his favor as the insured.

The symbol "7" for UIM coverage under the Policy appears on the "Schedule Of Coverages And Covered Autos" section at page 163 of the Policy. Scholz points to no case law that requires the UIM endorsement to also contain the symbol "7." The UIM endorsement is listed on the "Schedule of Forms and Endorsements" for the Business Auto Liability part at page 173 of the Policy. Just fourteen pages later the UIM endorsement begins. (Doc. 1, Ex. A, p. 187.) There, it explains that an insured for purposes of UIM coverage is a person "occupying" a covered "auto." (*Id*. 187–88.) Though it might be inconvenient, a policy holder can easily flip back through the Policy and find the clearly-labeled "Schedule of Coverages and Covered Autos" on page 163 of the Declarations. Scholz does not argue that the "Schedule of Coverages and Covered Autos" is

---

[1] The Policy provides general liability coverage to "symbol 1" vehicles. "Symbol 1" vehicles include "any 'auto'." (Doc. 1, Ex. A, p. 163 and 174.)

7

ambiguous and, for the following reasons, the Court concludes it is subject to only one interpretation.

The line describing the scope of DC Automotive's UIM coverage under the Policy includes the symbol "7" under the "Schedule of Coverages and Covered Autos" heading. The portion of the Policy defining the "Business Auto Coverage Form" provides that coverage appearing next to the symbol "7" extends only to "autos" listed in "Item Three of the Declarations." "Item Three" lists only ten vehicles owned by DC Automotive. That means in order to be insured for purposes of UIM coverage a person must have been occupying one of the ten vehicles listed in "Item Three." Scholz acknowledges that he was not riding in any of those vehicles at the time of the accident.

The absence of the symbol "7" in the UIM endorsement does not create an ambiguity. Pursuant to the unambiguous language in the Policy, Scholz is not an "insured" for UIM coverage because he was not occupying a "covered auto" at the time of the accident. Thus, the Court concludes that he is not afforded contractual UIM coverage under the Union Insurance Policy.

Scholz's second argument in favor of coverage is that the term "owned" vehicle is never used in the UM/UIM endorsement. Rather, the endorsement only uses the term "covered auto" which Scholz asserts could include a non-owned vehicle. He cites no authority for the proposition that the UIM endorsement in the Policy is required to use the term "owned vehicle" in order to limit UIM coverage to vehicles owned by DC Automotive. As already discussed, the Policy clearly denotes the ten listed vehicles owned by DC Automotive as the only vehicles which are covered under the UIM endorsement in the Policy. Scholz was not driving a covered auto and he is not an insured under the Union Insurance policy for UIM purposes.[2]

Scholz's third and final argument is that, under South Dakota law and public policy, he is entitled to UIM coverage. He contends that limiting UIM coverage to only "owned" or "scheduled" vehicles would be contrary to the purpose of UIM coverage, which he describes as "to cover an insured when liability insurance fails to adequately cover any damages." (Doc. 32 at p. 9.)

---

[2] To the extent that Scholz is claiming that anyone operating a motor vehicle covered with liability insurance under the Policy is automatically an "insured" for UIM coverage, that claim is rejected. First, Scholz offers no legal authority in support of such a claim. Second, it would contravene the language of the insurance contract.

A review of South Dakota statutes and cases reveals that there is no prohibition on an insurer's limiting UIM coverage on corporate-owned vehicles to the occupants of those vehicles.

The underinsured motorist statute relevant to this case provides:

> No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured. Any policy insuring government owned vehicles may not be required to provide underinsured motorist coverage.

SDCL § 58-11-9.4.

Additionally, SDCL 58-11-9.5 addresses the scope of the UIM requirements under the UIM statute. It states:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

SDCL § 58-11-9.5.

The South Dakota Supreme Court has considered the issue of who is intended to be protected by the underinsurance coverage mandated in SDCL 58-11-9.5. *See Gloe v. Iowa Mut. Ins. Co.*, 694 N.W.2d 238 (S.D. 2005). In *Gloe*, the plaintiff sued to recover undersinsured motorist benefits under his auto insurance policy for the wrongful death of his parents who were struck and killed by a motorist while they were walking. *Id.* at 240–41. The Court noted that the purpose of UIM coverage and statutes is to protect the insured party who is injured in an automobile accident by the negligence of an underinsured motorist. *Id.* at 245. It held that there is no mandated UIM coverage for the wrongful death of one not insured under the policy. *Id.* at 249. Accordingly, the Court decided that the endorsement in the plaintiff's policy, which limited undersinsured motorist coverage

9

to "bodily injury or death" sustained by an "insured," was valid and enforceable. *Id.* at 249–50. As a result, the plaintiff could not recover underinsured motorist benefits because his parents were not insureds under his policy and he did not personally suffer bodily injury or death. *Id.* In reaching this holding the South Dakota Supreme Court noted that "[w]hile uninsured [and underinsured] motorist coverage is to be given a liberal interpretation, coverage should not be created where there is none." *Id.* at 249 (citing *Livingston v. Omaha Property & Casualty Insurance Co.*, 927 S.W.2d 444, 446 (Mo. App. 1996)).

In the present case, because Scholz was not occupying a covered auto at the time of the accident, he was not an "insured" under the UIM endorsement in the Union Insurance Policy. Denying UIM coverage for Scholz who is not an "insured" under the terms of the Policy would not contravene South Dakota statutes requiring UIM coverage for persons who are "insureds." The statutes do not require UIM coverage for those who are not insureds. The Union Insurance policy does not list Scholz as an "insured" nor does he qualify as an "insured."

It is not against public policy in South Dakota to place limits on undersinsured motorist coverage. *See, e.g., De Smet Ins. Co. of South Dakota v. Pourier*, 802 N.W.2d 447, 451 (S.D. 2011) ("Nothing in SDCL 58-11-9.5 requires an insurer to pay underinsured motorist benefits in every circumstance."). This principle is explained by the South Dakota Supreme Court in *Pourier* and *Wheeler v. Farmers Mut. Ins. Co. of Nebraska*, 824 N.W.2d 102 (S.D. 2012). The facts in both cases are nearly identical. The cases involve minors who were injured in automobile accidents where the other driver was at fault. The at-fault driver in *Pourier* was underinsured; the at-fault driver in *Wheeler* was uninsured. In *Pourier*, the underinsured motorist claim was denied by the insurance company based on an "owned-but-not-insured" exclusion in the policy. In *Wheeler*, the uninsured motorist claim was denied by the insurance company based on the same exclusion. In both cases the trial court held that the "owned-but-not-insured" exclusion was valid and upheld the denial of the claims.

On appeal in *Pourier*, the South Dakota Supreme Court analyzed the validity of the "owned-but-not-insured" exclusion under South Dakota's underinsured motorist statute (SDCL 58-11-9.5). The Court concluded that the exclusion was valid and enforceable under that statute. *See* 802 N.W.2d at 451. As a result, the minor in *Pourier* was precluded from recovering underinsured motorist benefits under the policy. *Id.* at 451–52.

10

Subsequently, in *Wheeler*, the South Dakota Supreme Court analyzed the validity of the "owned-but-not-insured" exclusion under the uninsured motorist statute (SDCL 58-11-9). The *Wheeler* Court held that the "owned-but-not-insured" exclusion was invalid under that statute, and that the minor could recover uninsured motorist benefits. *See* 824 N.W.2d at 106. The Court explained that the difference in its holdings in *Pourier* (minor could not recover underinsured motorist benefits) and *Wheeler* (minor could recover uninsured motorist benefits) rested on differences in the language of the uninsured motorist statute at SDCL 58-11-9 and the underinsured motorist statute at SDCL 58-11-9.5.  The Court stated, in part:

> As can be seen from a review of SDCL 58–11–9 and SDCL 58–11–9.5, the language used in these two statutes is different. Most significantly, SDCL 58–11–9.5 includes the language "[s]ubject to the terms and conditions of such underinsured motorist coverage . . ." whereas SDCL 58–11–9 does not include such language. Thus, although SDCL 58–11–9.5 expressly allows an insurer to limit coverage, SDCL 58–11–9 does not.
> We presume that the Legislature meant something when it included this language in the underinsured motorist statute, but did not include such language in the uninsured motorist statute. The exclusion of such language from the uninsured motorist statute indicates that although the Legislature contemplated insurers placing limitations on the terms and conditions of underinsured motorist coverage, it did not intend for such limitations to be placed upon the terms and conditions of uninsured motorist coverage. If the Legislature had intended the coverage mandated under SDCL 58–11–9 to be "[s]ubject to the terms and conditions of such un[insured] motorist coverage," it would have said so. Instead, it chose not to include such language.  Therefore, because the Legislature expressly allowed insurance companies to place limitations upon underinsured motorist coverage but did not expressly do so for uninsured motorist coverage, we conclude that Farmers' "owned-but-not-insured" exclusion is void with regard to uninsured motorist coverage.

*Wheeler*, 824 N.W.2d at 109.[3]

---

[3] The South Dakota Supreme Court mentioned a potential rationale for the South Dakota Legislature's omission of language from SDCL 58-11-9 expressly allowing insurance companies to place limitations on uninsured motorist coverage, saying that it "could be due to its recognition that in undersinsured motorist cases, the insured has the protection of two policies (his or her own policy and the torfeasor's policy), whereas in uninsured motorist cases, the insured does not have the benefit of recovering under the torfeasor's policy." *Id.* at 109 n. 3. There is no mention in the pleadings or briefs whether Scholz sought or recovered underinsured motorist benefits under his own automobile insurance policy, if he had one.

11

South Dakota law contemplates insurers placing limitations on the terms and conditions of underinsured motorist coverage.  It does not prohibit an insurer from limiting UIM coverage on corporate-owned vehicles to individuals who are injured while occupying those vehicles. The language of the Union Insurance policy imposing such a limitation is unambiguous and must be honored.  If Scholz had been occupying a covered vehicle at the time of the accident, he would have been entitled to coverage under the UIM endorsement in the Union Insurance Policy.  The limitation on UIM coverage in the Policy issued to DC Automotive cannot be characterized as against public policy simply because it is not available to Scholz under the particular facts of this case.

## CONCLUSION

Scholz has not pointed to any genuine disputes of material fact that would avoid judgment in favor of Union Insurance. For the foregoing reasons, the motion for judgment on the pleadings is granted. Accordingly,

> **IT IS ORDERED** that the Motion for Judgment on the Pleadings by Plaintiff Union Insurance Company (Doc. 18) is granted and judgment will be entered in its favor.

Dated this 20th day of July, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK